UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK SNYDER and ELECTRICAL
APPARATUS SALES, LLC, a Michigan
limited liability company,

       Plaintiffs,

v.

MYERS POWER PRODUCTS, INC.,
a California corporation,

       Defendant.
_____/

Case No. 10-cv-12316

Honorable Patrick J. Duggan

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_November 30, 2010.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

Plaintiffs Mark Snyder and Electrical Apparatus Sales, LLC filed this action against Myers Power Products, Inc. to recover unpaid sales commissions. Before the Court is Defendant's Motion to Compel Arbitration, to Dismiss, or for a More Definite Statement. The matter has been fully briefed, and the Court heard oral arguments on October 28, 2010. For the reasons stated below, the Court denies the Motion.

### I. Factual and Procedural Background

Plaintiff Mark Snyder is a Michigan-based independent sales representative

specializing in the sale of electrical equipment. Pls.' Resp. Br. 2. Since 2001, Snyder has conducted business through Electrical Apparatus Sales, LLC, a single-member Michigan limited liability company. *Id.* Defendant Myers Power Products, Inc. is a California-based manufacturer of electrical equipment. *Id.* Snyder sold electrical equipment manufactured by Defendant or its subsidiaries for nearly ten years. *Id.* at 3. Electrical equipment often involves a lengthy sales cycle, as a successful bid is the culmination of the sales representative's work over several months. *Id.* at 2-3. Plaintiffs claim that Snyder had no written contract with Defendant, but that Defendant's regular practice was to pay Snyder an industry standard commission of between four and ten percent of sales. *Id.* at 3.

In late 2007, Snyder learned of projects being quoted for Consumers Energy, a Michigan-based public utility. *Id.* at 4. Snyder contacted Defendant's National Sales Manager, Jack Hastings, to inform him of this opportunity. *Id.* at 4-5. Consumers Energy planned to upgrade power distribution equipment at four generating facilities in Michigan, beginning with the Karn / Weadock Generating Complex near Saginaw. *Id.* at 5. Snyder worked to ensure that Defendant was on Consumers Energy's list of approved equipment suppliers, and teamed up with Dennis Patton, Defendant's Application Engineering Manager, to develop a bid. *Id.* at 5-6. Defendant submitted this bid in December 2008. *Id.* at 6.

Around this time, Snyder requested that Defendant provide him with a written sales representative contract. *Id.* Snyder made this request because he believed that Defendant had failed to pay him the full commission due on recent sales, including a project at the

2

Chrysler Proving Grounds. *Id.* Snyder claims that Defendant ignored his request. *Id.*

Snyder soon noted positive developments in bid review meetings with buyers from WorleyParsons Group, the project's procurement manager. *Id.* at 6-7. Plaintiffs claim that Defendant understood it would likely win the Consumers Energy contract, and that Snyder had "hit the mother lode for electrical switchgear sales." *Id.* at 7.

Defendant soon provided Snyder with a written sales representative agreement. *Id.* The proposed agreement applied California law and mandated dispute resolution through arbitration in Los Angeles County, California. Def.'s Mot. Ex. A-1 at 5. It also provided that the agreement was effective as of the date Defendant countersigned. *Id.* at 6. Snyder claims that because some provisions were objectionable to him, he marked up the contract with changes, signed the marked-up version, and sent it back to Defendant. Snyder Decl. ¶¶ 4-5. Neither party has been able to produce the agreement that Snyder signed.

On February 2, 2009, Snyder sent an e-mail to Defendant's Chief Operating Officer, Diana Grootonk, stating in pertinent part:

> I did receive my contract, signed two copies, and mailed both copies back to you in Corona. Perhaps it was an oversight, or, it could be that I did not follow procedure correctly, but I have not received a return copy with your signature.

Def.'s Mot. Ex. A-2. Grootonk replied that day, stating that Defendant was terminating Snyder's representation effective February 2, 2009, due to the "general lack of work produced" in Snyder's territory during the last few years. *Id.* She continued, "[a]lthough the formal contract was never fully executed, attached is a formal termination letter for your records." *Id.*

Plaintiffs claim that in May 2009, Consumers Energy awarded the Karn contract to

3

Defendant, purchasing equipment for $2,319,000. Pls.' Resp. Br. 9. In a letter to Grootonk dated July 14, 2009, Snyder requested payment of commissions on the Consumers Energy order "in accordance with the terms of our contract." Pls.' Resp. Ex. L at 2. On July 20, 2009, Grootonk replied in a letter stating that the agreement was "never fully executed," but provided for no commissions on orders received after termination. Pls.' Resp. Ex. M. Grootonk added that although the parties had agreed to honor the commission if the order was secured within thirty days of termination, the order was obtained later and required "considerable additional work to conclude." *Id.* Accordingly, Defendant was not obligated to pay commission, but would offer a "finder's allowance" of one-half of one percent of the initial purchase order. *Id.*

Plaintiffs filed this action on June 11, 2010. Count I of the Complaint, "Claim for Unpaid Commissions," asserts that Plaintiffs were the "procuring cause" of sales to Chrysler Corporation and Consumers Energy, yet received improper commissions or no commission on the sales. Plaintiffs seek unpaid commissions plus a double award of unpaid commissions, attorneys' fees, and costs pursuant to the Sales Representatives' Commissions Act, Michigan Compiled Laws § 600.2961. Count II, "Unjust Enrichment," alleges that Plaintiffs' account procurement and management services bestowed substantial benefit on Defendant, and that it would be unjust to allow Defendant to retain that benefit without compensating Plaintiffs.

On July 30, 2010, Defendant filed a Motion to Compel Arbitration, to Dismiss, or for a More Definite Statement. In its Motion, Defendant argues that the Court should compel arbitration according to the parties' agreement. Alternatively, Defendant contends that the

4

Court should dismiss Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) or require a more definite statement pursuant to Rule 12(e).

## II. Defendant's Motion to Compel Arbitration

"'Arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 655, 106 S. Ct. 1415, 1418 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S. Ct. 1347, 1353 (1960)). Defendant's admissions preclude the existence of an agreement to arbitrate. Defendant contends that the parties entered into a written agreement containing an arbitration provision. *See* Def.'s Mot. Ex. A-1. That agreement, however, provided that it "shall be effective as of the date MYERS countersigns." *Id.* at 6. Defendant admitted that it "never fully executed" the Agreement. Def.'s Mot. Ex. A-2. The agreement therefore never became effective between the parties. Accordingly, the Court cannot conclude that the parties agreed to arbitration.

Defendant contends that its signature is unnecessary because the parties' conduct indicates mutual assent. The Court disagrees. Conduct may establish mutual assent only if a reasonable person could have interpreted the conduct in the manner that is alleged.[1] *Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 119, 507 N.W.2d 591, 598 (Mich. 1993). Shortly after returning a signed copy of the agreement to Defendant, Snyder asked for a

---

[1] Although the written agreement provides that it is governed by California law, the parties both cite Michigan case law regarding contract formation. The Court therefore applies Michigan law, but notes that California law provides the same result. *See Russell v. Union Oil Co.*, 86 Cal. Rptr. 424, 427 (Cal. Ct. App. 1970).

copy bearing Defendant's signature. Def.'s Mot. Ex. A-2. Defendant replied the same day, stating that Snyder's representation was terminated. *Id.* This statement unequivocally terminated the parties' relationship, and no reasonable person could construe it as assent. Defendant points to the parties' subsequent statements regarding contract terms, but these offer little support for its position. Rejection of an offer ends the parties' negotiations, unless the offeror renews his offer or assents to a proposed modification. *Thomas v. Ledger*, 274 Mich. 16, 21, 263 N.W. 783, 785 (Mich. 1936). The statements cited by Defendant suggest neither result. The Court therefore concludes that the parties did not agree to arbitrate disputes, and Defendant's Motion to Compel Arbitration must be denied.

### III. Defendant's Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Supreme Court recently provided in *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965).

The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 129 S. Ct. at 1949. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. In conducting this analysis, the Court may consider the pleadings, exhibits attached thereto, and documents referred to in the complaint that are central to the plaintiff's claims. *See Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999).

Plaintiffs have stated a plausible claim for recovery of unpaid commissions. They allege that they sold Defendant's electrical equipment from 2001 until 2009, receiving commissions for sales procured. Compl. ¶¶ 9-10. These facts are sufficient to find an implied-in-fact contract. Under Michigan law, a contract is implied "where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction."

7

*Erickson v. Goodell Oil Co.*, 384 Mich. 207, 212, 180 N.W.2d 798, 800 (Mich. 1970). A trier of fact could reasonably find that Defendant's payment of commissions to Plaintiffs for several years established an implied-in-fact contract to pay commissions on sales that Plaintiffs procured. Plaintiffs allege that they procured sales to Chrysler Corporation and Consumers Energy, and received either an improper commission or no commission on these sales. Compl. ¶ 12. It is reasonable to infer that Defendant breached the implied contract by failing to pay the required commission.

Plaintiffs have also stated a plausible unjust enrichment claim. Under Michigan law, unjust enrichment occurs where the defendant receives a benefit from the plaintiff and it is inequitable that the defendant retain the benefit. *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546, 473 N.W.2d 652, 663 (Mich. 1991). Plaintiffs allege that they bestowed substantial benefit on Defendant by performing account procurement and management duties. Compl. ¶¶ 17-18. Plaintiffs further allege that they were not properly compensated for their services, and that it would be unjust to allow Defendant to keep the benefit of these services without requiring compensation. *Id.* ¶¶ 17, 19. If true, these allegations are sufficient to find Defendant liable; thus, they state a plausible unjust enrichment claim.

Defendant repeatedly points to the lack of detail in the Complaint, noting that Plaintiffs do not identify the equipment sold, the specific sales for which Plaintiffs received a commission, and the amount of the commission. Def.'s Mot 10-11. Defendant mistakenly concludes that this justifies dismissal, relying on *Fednav Ltd. v. Chester* for the proposition that courts will not "construe the complaint to say by . . . implication what it very simply could have said directly." 547 F.3d 607, 617 (6th Cir. 2008). But in *Chester*,

dismissal was necessary because the plaintiff failed to plead an injury in fact, and therefore lacked standing. *Id.* at 616-17. Although Federal Rule of Civil Procedure 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," it does not require detailed factual allegations. *Iqbal*, 129 S. Ct. at 1949. The claim stated here is detailed enough; Plaintiffs allege that they are owed commissions for sales of Defendant's electrical equipment to Chrysler Corporation and Consumers Energy. This "short and plain" statement of Plaintiffs' claim is all that Federal Rule of Civil Procedure 8 requires.

### IV. Defendant's Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Plaintiffs claim that they secured orders for Defendant's equipment from Chrysler Corporation and Consumers Energy, yet never received the proper commission. Compl. ¶¶ 12-13. Plaintiffs also allege that Defendant improperly compensated them for performing account procurement and managerial duties. *Id.* ¶ 17. Defendant apparently identified the transactions at issue, as its Motion for a More Definite Statement actually provides considerable detail pertaining to those transactions. The Motion includes as exhibits the Sales Associate Agreement presented to Snyder, as well as e-mail correspondence concerning the sale to Consumers Energy and Snyder's termination. *See* Def.'s Mot. Exs. A, A-1, A-2. Defendant responded to Plaintiffs' allegations in detail, and cannot assert that the Complaint was too vague.

### V. Conclusion

Defendant's Motion to Compel Arbitration must be denied because Defendant's admissions preclude the existence of an agreement to arbitrate disputes. Defendant's Motions to Dismiss and for a More Definite Statement must also be denied, as Plaintiffs have stated plausible and sufficiently detailed claims for relief.

Accordingly,

**IT IS ORDERED** that Defendant's Motion to Compel Arbitration, to Dismiss, or for a More Definite Statement is **DENIED**.

<u>s/PATRICK J. DUGGAN</u>
UNITED STATES DISTRICT JUDGE

Copies to:

Paul J. Dillon, Esq.
Frederick A. Acomb, Esq.
Paul D. Hudson, Esq.